[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
 BACKGROUND:
The Plaintiff originally filed docket number CV 01 0449507 S, in Small Claims Court in the Judicial District of New Haven. Plaintiff alleges in its complaint that the Defendant owed a balance of two thousand four hundred forty-seven dollars and sixty cents ($2,447.60) on Plaintiff's Invoice Number 3156. Plaintiff further alleges that the defendant owned a CT Page 9802 balance of seven hundred sixty three dollars and twenty cents ($763.20) on plaintiffs Invoice Number 3163. Plaintiff also sought a filing fee of thirty dollars ($30.00). Plaintiff was alleged that the Defendant owed it a total of three thousand two hundred forty dollars and eighty cents ($3,340.80).
In addition to the aforementioned case, the Plaintiff also filed docket number CV 01 0449508, asserting that the Defendant stopped payment on its check numbered 30655628. The Plaintiff also inserts that it is entitled to recover a bank fee of ten dollars ($10.00). Plaintiff also asserted that the Defendant owed one hundred ninety dollars and eight cents on Invoice number 3222. The total recovery sought in this file is one thousand nine hundred eighty dollars and eighty cents ($1,980.80).
In addition to the aforementioned cases, the Plaintiff also filed docket number CV 01 0449509, asserting that the Defendant refused to pay for services rendered on Invoice number 3190, nine hundred fifty four dollars ($954.00); Invoice number 3195, ninety five dollars and forty cents ($95.40); and a filing fee of thirty dollars ($30.00).
On February 15, 2001, the Defendant filed an Answer to the complaint in docket number CV 010449507 S (SCA-7-165958), denying that it owed money to the Plaintiff for serviced rendered. The Defendant also filed a Special Defense based on "the fraudulent acts of its business owner and main employee Jason Frase".
On about February 20, 2001, the Defendant moved to transfer all three files to the regular docket. On March 16, 2001, motions to transfer were granted. Before the commencement of trial, this Court granted the parties joint oral motion to consolidate the three actions.
 FACTS:
The Court finds that the following facts have been proven by a fair preponderance of the evidence:
The Plaintiff General Technology Group, Inc. (hereinafter "GTG") is a Corporation that provides computer-related hardware and software services. The Defendant, New England Drywall Acoustical LLP, is an incorporated limited liability partnership that provides construction-related services.
Sometime prior to April 27, 2000, the Defendant desired to computerize certain aspects of its business enterprise. On or about April 27, 2000, the Plaintiff and the Defendant entered into an agreement whereby the Plaintiff was to "computer solutions" to the Defendant. This included CT Page 9803 labor, hardware purchases and set up, software purchase and installation and other computer related services for the creation of a working computer network for the Defendant.
On or about May 11, 2000, the Plaintiff commenced work setting up the hardware and software aspects of Defendant's computer network system. The software requested by the Defendant was installed and set up on the server by the Plaintiff. Said software, included, but was not limited to a Microsoft Operating System, Microsoft Office 2000, Citrix Metaframe 1.8 for Work Groups and a version of Timberline (a business operation software package).
The system was installed and began operating without any major problems, but there were some debugging issues that were addressed by the Plaintiff. Invoice 2857 (9/21/2000) indicates that a printer port required reconfiguring. Invoice 2816, (9/08/2000) indicates that work was done on an Internet accessing problem.[1] Invoice 2849 (10/1/2000) indicates that work was done to configure network, printing and licensing. Invoice 2918, (10/20/2000) indicates that computer hardware, including, but not limited to a Compaq Deskpro and Hewlett Packard Printer were added to the network configuration. Invoice 2938 indicates that the Plaintiff had instructed an employee of the Defendant on a software problem and also instructed said employee on how to run Microsoft scandisk on the server and the Deskpro. Invoice 2940, indicates that the Plaintiff had to "reboot the proxy server [and] connect cables were knocked out." Invoice 2971, indicates that the Plaintiff set up the Timberline software on the new server. Invoice 3075, indicates that the Plaintiff trained employees of the Defendant on the process of backing up the data on the computers.
No problems were encountered with the Timberline program until after January 11, 2001. On this date, the defendants attempted to access the Timberline program to continue with their training sessions on the program, but they were unable to gain access into said program. The last time that the defendant had successfully used the Timberline program was on January 5, 2001, during a training session. At the end of the aforementioned training session, an employee, Ms. Carolyn Gagliardo of United Solutions, Incorporated (hereinafter "USI"), the company that was hired to train the defendant's employee on the Timberline accounting program, attempted to install upgrades to said program. This was despite the advice from the Plaintiff that it should be contacted before the plaintiff added any additional software or changed any software residing on the network. After running the installation program on the Defendant's computer system, the Defendant's employees did not make further use of the computer and went home. CT Page 9804
On January 11, employees of the Defendant attempted to access the Timberline program for the purpose of continuing training on the Timberline program, but they were unable to gain access to said program. This was the first time there was any attempt to access the program since the upgrades were made by Ms. Gagliardo on January 5, 2001.
Upon discovering the problems with accessing the Timberline software program, the defendant contacted the Plaintiff. The following day Jamie Franco, an officer and employee of GTG went to the Defendant's place of business to trouble shoot the problem with the computer system. When told what happened he started working on the computer for approximately four (4) hours. Mr. Franco concluded that the problem with the system was directly related to the USI employee's attempt to upgrade the Timberline program. After a consultation with the Plaintiff, a decision was made by the Defendant that the Plaintiff should perform a clean install of the software on the server in lieu of an attempt to debug the system.
On January 12, 2001, representatives of the plaintiff were given a key to the Defendant's offices for the purposes of gaining access the computer equipment at the defendant's offices after the Defendant's normal office hours. Upon the representatives of the Plaintiff entering the aforementioned offices a security alarm activated. The Plaintiff's representatives removed the Deskpro computer and did not talk to any individuals responding to the activation of the alarm. The equipment was removed from the Defendant's premises without the explicit permission of the Defendant.
Upon finding out that a piece of their computer system hardware was no longer on premises, the Defendant contacted the Plaintiff to ascertain whether or not the Plaintiff had possession of the subject computer equipment and were informed by the Plaintiff that its representative had picked up the equipment and that said equipment was still in Plaintiffs possession. The Defendant then requested that the equipment be returned to it immediately and for the Plaintiff to all return the key that was used to gain access to the Defendant's offices. The Defendant further instructed the Plaintiff that their business relationship was at an end.
The Defendant demanded that the Plaintiff return the subject computer equipment, but Plaintiff refused to return said equipment until Plaintiff was paid six thousand dollars ($6,000.00) that it was assert due for services rendered. When the Defendant refuse to pay the aforementioned amount, the Plaintiff adjusted its demand for the release of the equipment downward to three thousand five hundred dollars ($3,500.00). The Defendant again refused and the Plaintiff made a downward adjustment once again to one thousand seven hundred and fifty dollars ($1,750.00). CT Page 9805
On January 25, 2001, the subject piece of computer hardware was returned to the Defendant. A GTG representative spent five (5) or six (6) hours working on the computer. The system was not completely finished at this time. Instead of reinstalling the software on the Compaq Deskpro, the Plaintiff attempted to debug it.
While at the Defendant's premises, representatives of the Plaintiff requested the check for one thousand seven hundred and fifty dollars ($1,750.00). Ms. Heather Sabota-McMahon placed it on the pull out leaf of her desk and Mr. Jamie Frank, Vice President of General Technology Group, Inc., took the check folded it and put it in his pocket. The representatives of General Technology Group left the premises shortly thereafter, but not before serving a small claim complaint on the Defendant for what it believe was the remaining amount due under the contract.
Sometime prior to January 29, 2001, the Defendant contacted DigiTech, LLC. (hereinafter DigiTech), for the purposes of diagnosing and repairing the subject computer network. On or about January 29, 2001, Mr. Christian Clute of DigiTech, looked at the system and came to the conclusion that there were several problems with the system and that the system was not "the typical or recommended method for designing a system to run Timberline software." Mr. Clute went on to propose various changes to repair the system.
 DISCUSSION:
The more credible and convincing evidence presented during the trial indicates that pursuant to the agreement between the parties of this action, the Plaintiff installed a computer system in accordance with the terms of said agreement. Said computer operated within acceptable perimeters until the employee from United Solutions attempted to install an upgrade to a new version of the Timberline software. The first time that the defendant's employees attempted to use the program after the upgrade, the program failed to operate in an acceptable manner to the defendant. The specific cause of the failure was that the improper installation of the upgrade version of the Timberline. The new software is designed to operate on a system that uses more than one computer while the original system installed by the plaintiff could operate on a single server.
The Plaintiff made various attempts to repair the system, including, but not limited to making the upgrade work by segregating portions of the Timberline software by placing some of the information on the Deskpro computer. CT Page 9806
This Court was impressed with the knowledge and candor of the defendant's witness, Mr. Clute. This witness testified that although he was familiar with Timberline programs, he was not certified for said program. However, while he agreed with the witnesses for the plaintiff that version Timberline 7.0 required separate servers, he further testified that he did not know the technical differences between Timberline versions 6.0 and 7.0, including the rather crucial issue as to whether the 6.0 version of the software could or even should operate on a standalone computer.
 Defendant's Special Defenses
The Defendant has filed a special defense of fraud on the behalf of the plaintiff. For the reasons cited herein for finding in favor of the Plaintiff on the Complaint, this Court's also finds in favor of the Plaintiff on the Defendant's Special Defenses.
 Defendant's Counterclaim
1. As to the First Count:
The First Count of the Counterclaim sounds in breach of contract. For the reasons stated above, the Court finds in favor of the Counterclaim Defendant General Technology Group on this Count.
2. As to the Second Count:
The Second Count of the Defendant's Counterclaim sounds in theft pursuant to § 52-564 C.G.S. This section concerns statutory theft and provides that:
 Any person who steals any property of another, or knowingly receives and conceals stolen property, shall pay the owner treble his damages.
It is well settled law that statutory theft is the same as larceny pursuant to § 52a-119 C.G.S.
 Statutory theft under § 52-564 `is synonymous with larceny under General Statutes § 53a-119.' Discover Leasing, Inc. v. Murphy, 33 Conn. App. 303, 309, 521 635 A.2d 843 (1993), citing Lauder v. Peck, 11 Conn. App. 161, 165, 526 A.2d 539 (1987). Pursuant to § 53a-119, `[a] person commits larceny when, with intent to deprive another of property or to appropriate the same to himself or a third person, he CT Page 9807 wrongfully takes, obtains or withholds such property from an owner.
 Suarez-Negrete V. Ttrotta, 47 Conn. App. 517, 520 (1998).
The Counterclaim Plaintiff asserts that the Counterclaim Defendant committed an act of statutory theft when it removed the CITRIX server from the Counterclaim Plaintiffs work site and refused to return it until the Counterclaim Defendant was paid the aforementioned amount of money. The Counterclaim Plaintiff further asserts that the Counterclaim Defendant committed another act of statutory theft when its representative took the check from the desk of the Counterclaim plaintiffs employee's desk.
As to the aforementioned allegations of theft, this Court finds the witnesses who testified on this issue to have been equally credible. Neither the witnesses for the Counterclaim. Plaintiff, nor the witnesses for the Counterclaim Defendants were more convincing then the other. In order to prove statutory theft against the Counterclaim Defendant, the Counterclaim Plaintiff must prove said theft by "clear and convincing evidence" instead of the usual civil standard of proof of "preponderance of the evidence". Schaffer v. Lindy, 8 Conn. App. 96, 105 (1986). This Court finds that the Counterclaim Plaintiff has not met its burden of establishing by "clear and convincing" the Counterclaim Defendant had the specific intent to ". . . deprive [the Counterclaim Plaintiff] of property or to appropriate the same to himself or a third person, he wrongfully takes, obtains or withholds such property from an owner.
The Third Count of the Counterclaim Plaintiff's Complaint sounds in an action based in extortion. The Counterclaim Plaintiff alleges that:
The Plaintiff through its business owner and main employee Jason Frase, or the latter acting on his own, without approval of the defendant knowingly used extornate means to collect or attempt to collect a debt which was not due plaintiff. Subsection 53a-119 (5) concerns larceny by extortion. This statute provides that:
 A person obtains property by extortion when he compels or induces another person to deliver such property to himself or a third person by means of instilling in him a fear that, if the property is not so delivered, the actor or another will: (A) Cause physical injury to some person in the future; or (B) cause damage to property; or (C) engage in other conduct constituting a crime; or (D) accuse some person of a crime or cause criminal charges to be CT Page 9808 instituted against him; or (E) expose a secret or publicize an asserted fact, whether true or false, tending to subject some person to hatred, contempt or ridicule; or (F) cause a strike, boycott or other collective labor group action injurious to some person's business; except that such a threat shall not be deemed extortion when the property is demanded or received for the benefit of the group in whose interest the actor purports to act; or (G) testify or provide information or withhold testimony or information with respect to another's legal claim or defense; or (H) use or abuse his position as a public servant by performing some act within or related to his official duties, or by failing or refusing to perform an official duty, in such manner as to affect some person adversely; or (I) inflict any other harm which would not benefit the actor.
In the instant action the Counterclaim Defendant is alleged to have committed extortion pursuant to the provisions of the above mentioned statute for reason that its representatives allegedly informed the Counterclaim Plaintiff that said Counterclaim Plaintiff could not get its equipment back until the Counterclaim Defendant paid all or some of a debt that the Counterclaim Defendant alleges is owed to it. Although a majority of the causes of action pursuant to the aforementioned statute can be facially eliminated because the specific facts of this case does not sound in a cause of action pursuant to subsections (A) through and including subsection (H), this Court comes to the conclusion that the evidence presented at trial was insufficient to prove that the Counterclaim Defendant committed an act of extortion pursuant to §53a-119 (5).
The Fourth Count of the Counter Claim Plaintiff's Complaint is based in a violation of the Connecticut Unfair Trade Practice Act. This Court finds that the Counterclaim Plaintiff has failed to prove by a fair preponderance of the evidence that the Counterclaim Plaintiff engaged deceptive acts or practices in the conduct of any trade or commerce pursuant to the provisions of § 42-110b C.G.S.
As to the Fifth Count (This Count of the Plaintiff's Complaint is actually entitled Count IV, but it follows another Count that is already entitled Count IV.) of the Counterclaim Plaintiff's Complaint, it sounds in an action based on the breach of covenant of good faith and dealing. For all of the reasons cited for the Court finding in favor of the Plaintiff on the Plaintiff's Complaint, the Court finds in favor of the Counterclaim Defendant on this Count of the Defendant's Counterclaim. CT Page 9809
 DAMAGES This Court finds damages as follows: Invoice 3190 ..................................... $ 954.00 Invoice 3195 ..................................... $ 95.40 Invoice 3156 ..................................... $2,447.60 Invoice 3163 ..................................... $ 763.20 Invoice 3222 ..................................... $ 190.80 Filing fues (3) .................................. $ 90.00 Check # 30655628 ................................. $1,750.00 Bank fee ......................................... $ 10.00 Total ............................................ $6,301.00
 CONCLUSIONS:
1. The plaintiff fulfilled its contractual obligations of installing the hardware and software aspects of the defendant's computer system.
2. The catastrophic failure of the system was not due to any action of the plaintiff, but the installation of a more recent version of the Timberline software by the defendant's contractor who was not an employee, agent, official or contractor of the plaintiff. The defendant's Special Defenses are denied.
3. Judgment may enter for the plaintiff and against the defendant in the amount of six thousand three hundred one dollar ($6,301.00) on the complaint.
4. Judgment may enter for the Counterclaim-defendant against the Counterclaim-plaintiff on the Counterclaim. So ordered.
Richard A. Robinson, J July 29, 2002